# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-03035-WJM-KMT

**WRIGHT & MCGILL CO.**,
a Colorado corporation,

      *Plaintiff/Counter-Defendant*,

v.

**ACTIVE OUTDOORS, LLC**,
a Pennsylvania limited liability company,

**JAMES M. KOWALSKI**,
an individual, and

      *Defendants/Counter-Plaintiffs/Third-Party Plaintiffs*

**KENNETH A. MIECZKOWSKI**,
an individual,

      *Defendant*.

v.

**DICK'S SPORTING GOODS, INC.**,
*dba* **FIELD & STREAM**, a Delaware corporation,

**AMERICAN SPORTS LICENSING, LLC**
a Delaware limited liability company, and

**EAGLE CLAW FISHING TACKLE CO.**,
a Colorado corporation,

      *Third-Party Defendant*s.

---

## ACTIVE OUTDOORS, LLC AND JAMES M. KOWALSKI'S
## AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

---

## AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Active Outdoors, LLC (hereinafter, "Active Outdoors") and James M. Kowalski (collectively, "Defendants"), by and through their undersigned attorney, for their counterclaims against Wright & McGill Co. (hereinafter, "W&MG") and third-party complaint against American Sports Licensing, LLC (hereinafter, "American Sports Licensing"), Dick's Sporting Goods, Inc. (hereinafter, "Dick's Sporting Goods" or "Dick's") and Eagle Claw Fishing Tackle Co. (hereinafter, "Eagle Claw") state as follows:

## PARTIES

1.      Active Outdoors, LLC is a Pennsylvania limited liability company with its principal place of business in Glen Lyon, Pennsylvania.

2.      James M. Kowalski is an individual who resides in Nangicoke, Pennsylvania and solely owns Active Outdoors, LLC.

3.      Upon information and belief, Wright & McGill Co. is a Colorado corporation with its principal place of business in Denver, Colorado.

4.      Upon information and belief, Eagle Claw Fishing Tackle Co. is a Colorado corporation with its principal place of business in Denver, Colorado.

5.      Upon information and belief, Eagle Claw is a wholly owned subsidiary of W&MG.

6.      Upon information and belief, Dick's Sporting Goods, Inc. is a Delaware corporation with its principal place of business in Coraopolis, Pennsylvania.

7.      "Jawbone" is a registered trademark (U.S. Registration No. 4877753) owned by American Sports Licensing, LLC for "extendable stick fishing rod holders."

- 2 -

8. Upon information and belief, American Sports Licensing, LLC is a Delaware limited liability company with its principal place of business in Coraopolis, Pennsylvania.

9. Upon information and belief, American Sports Licensing, LLC is a wholly owned subsidiary of Dick's Sporting Goods.

10. Upon information and belief, Field & Stream is a fictitious name used by Dick's Sporting Goods.

## JURISDICTION

11. This Court has subject matter jurisdiction over the counterclaims and third-party complaint pursuant to 28 U.S.C. §§ 1331 and 1338 and over the state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

12. This Court has personal jurisdiction over Dick's Sporting Goods because, upon information and belief, Dick's Sporting Goods has substantial, continuous, and systematic contacts with the State of Colorado, retail stores in the State of Colorado, and has availed itself of the privilege of conducting activities in this State. In addition, Dick's has committed and continues to commit acts giving rise to this action in this district, including by directly or indirectly having distributed, sold and/or offered for sale infringing products through physical retail locations and website purchases in the State of Colorado and has conspired with at least one corporation located in the state of Colorado to make the infringing products causing injury within this district.

13. This Court has personal jurisdiction over American Sports Licensing, LLC because, upon information and belief, American Sports Licensing has committed and continues to commit acts giving rise to this action in this district, including by directly or indirectly having purposefully allowed its trademark "Jawbone" to be put on infringing products that are distributed, sold and/or

- 3 -

offered for sale in the state of Colorado through physical retail locations and website purchases causing injury within this district and has conspired with at least one corporation located in the state of Colorado to put its trademark on infringing inferior products causing injury within this district.

14.    This Court has personal jurisdiction over Wright & McGill Co. and Eagle Claw Fishing Tackle Co. because, upon information and belief, both have substantial, continuous, and systematic contacts with the State of Colorado and have availed themselves of the privilege of conducting activities in this State.   In addition, both are Colorado corporations having their principal places of business in Colorado.  Both have committed and continue to commit acts giving rise to this action in this district, including making or selling infringing products, either directly or indirectly, that are distributed, sold and/or offered for sale in the state of Colorado through physical retail locations and website purchases causing injury within this district.

## **<u>VENUE</u>**

15.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because W&MG, Eagle Claw, Dick's Sporting Goods, and American Sports Licensing are subject to personal jurisdiction in the state of Colorado.

16.    Venue is proper in this judicial district under 28 U.S.C. § 1400 for at least W&MG, Eagle Claw, and Dick's Sporting Goods.

## FACTUAL ALLEGATIONS

### Background

17.     It is known in the fishing industry that W&MG copies products already on the market, either directly or indirectly.

18.     Upon information and belief, W&MG sells these copied products at a lower price point by using cheaper materials.

19.     Upon information and belief, W&MG uses at least one Chinese manufacturer to make the alleged infringing fishing rod holders.

20.     W&MG makes, directly or indirectly, fishing rod holders that are of an inferior quality that infringe the '995 patent, trade dress, and common law copyrights.

### The V-Shaped Rod Holder

21.     On or about 2006, Kowalski created a fishing rod holder with a V-shaped head (hereinafter, the "V-shaped rod holder") as pictured below:



Figure 1.

Left:  V-shaped rod holder labeled "Fishin' Stix" on the right-side prong of the V.

Right:  Infringing V-shaped rod holder labeled "Eagle Claw®"

22.     Kowalski has a common law copyright in the V-shaped rod holder.

23.     The V-shaped rod holder is Fishin' Stix Model FS1 and has been consistently used for over ten (10) years.

24.     The V-shaped rod holder design has an overall look that constitutes its trade dress.

25.     The V-shaped rod holder has a combination of non-functional core design elements that can be used as a guide to describe its overall look and includes a black powder coated tubular steel stake; a V-shaped head design made of plastic that comes in black, orange, yellow, red, pink, and green; a conical plastic tip that matches the color of the head and comes in black, orange, yellow, red, pink, and green; and a patterned silver-tone reflective tape wrapped around the base of the V-shaped head.

26.     The V-shaped rod holder utilizes a push pin design that allows it to be adjusted to multiple height settings telescopically, which can be extended to 30" and collapsed to 12" to fit inside a tackle box.

27.     Upon information and belief, W&MG and Eagle Claw copied, either directly or indirectly, the non-functional core design elements of the V-shaped rod holder as shown by the example in Fig. 1 above.

**The Football Rod Holder**

28.     On or about 2009, Kowalski created a fishing rod holder that resembled a football goal post (hereinafter, the "football rod holder") with the larger size shown in Fig. 2 and the smaller size shown in Fig. 3.



Figure 2.

Left:  Football rod holder labeled "Fishin' Stix Magnum" on the right-side prong of the V.

Right:  Infringing rod holder labeled "Jawbone™" on the right-side prong of the V.

29.     This time, U.S. Design Patent No. D647,995 was obtained.

30.     Kowalski has a common law copyright in the football rod holder.

31.     The football rod holder comes in two (2) sizes and four (4) models.

32.     The smaller size extends from 12"-30" and comes in black, orange, yellow, red, pink, and green (Model FST1) as well as an off-white/greenish color that glows (Model GS1).  See Fig. 3 below.



Figure 3.

Left:  Glow-in-the-dark football rod holder unlabeled by Fishin' Stix

Right:  Infringing glow-in-the dark rod holder unlabeled by Field & Stream

33.    The larger size football rod holder called the "Magnum" extends from 17"-40" and comes in black, orange, yellow, red, pink, and green (Model FS2) as well as an off-white/greenish color that glows (Model GS2).  See Fig. 2.

34.    The football rod holder design has an overall look that constitutes its trade dress.

35.    The football rod holder has a combination of non-functional core design elements that can be used as a guide to describe its overall look and includes a black powder coated tubular steel stake; a trident-like head design whose shape is most accurately depicted in Figs. 2 (larger size) and 3 (smaller size) that is made of plastic and comes in black, orange, yellow, red, pink, green, and off-white/greenish (glow); a conical plastic tip that matches the color of the head and comes in black, orange, yellow, red, pink, green, and off-white/greenish (glow); and a patterned silver-tone reflective tape wrapped around the base of the head.

36.    The football rod holder utilizes a push pin design that allows the football rod holder to be adjusted to multiple height settings telescopically.

37.    Upon information and belief, W&MG copied, directly or indirectly, the football rod holder as previously described with examples shown in Figs. 2 and 3 above.

38.    Upon information and belief, American Sports Licensing authorized the Jawbone trademark to be affixed on the infringing rod holder pictured on the right in Fig. 2 above.

39.    Upon information and belief, Jawbone is the store brand for Dick's Sporting Goods.

40.    Upon information and belief, W&MG copied, directly or indirectly, the glow-in-the-dark version of the football rod holder as shown in Fig. 3 above in the smaller size.

**Container**

41.     Kowalski created the four-sided acrylic containers that hold the football rod holders and the V-shaped rod holders as pictured on the far right in Fig. 4 below.



Figure 4.

Left to right

1.  Infringing Field & Stream container

2.  Infringing Jawbone container

3.  Fishin' Stix container

42.     Kowalski has a common law copyright in the four-sided clear acrylic containers.

43.     On or about 2012, the four-sided clear acrylic container that houses the football rod holders was marked with the '995 patent.

44.     The four-sided clear acrylic containers have been used continuously for over six (6) years and are still used today.

45.     The four-sided clear acrylic container design has an overall look that constitutes its trade dress.

46.     The container has a combination of non-functional core design elements that can be used as a guide to describe its overall look and includes four (4) sides rising upwards from a square base; each of the four panels measuring 3" wide and 8" tall and the base measuring 3" by 3"; all components are made of clear acrylic to which a sticker is attached.

47.    Upon information and belief, W&MG, American Sports Licensing, and Dick's Sporting Goods copied, either directly or indirectly, the non-functional core design elements of the four-sided clear acrylic container.

**Assignments**

48.    The sole owner of the '995 patent is Kowalski.

49.    Kenneth Mieczkowski assigned all his rights to the '995 patent and ownership interest in Triple Crown Outdoors to James Kowalski in an assignment dated November 5, 2016.

50.    The V-shaped rod holder and the football rod holder are made by Triple Crown Outdoors with all "right, title, and interest in and to all assets of Triple Crown" assigned to Active Outdoors, LLC in a written assignment with an effective date of November 28, 2016.

**Fishin' Stix™**

51.    On or about 2005, "Fishin' Stix" was used as a common law trademark for the V-shaped holders.

52.    On or about 2009, "Fishin' Stix" was used as a common law trademark for the football rod holders.

53.    Both the V-shaped rod holders and football rod holders are marketed under the Fishin' Stix trademark, which has been in continuous use and is still being used today.

54.    On or about 2012, "Fishin' Stix™" appeared on the four-sided acrylic containers that house the fishing rod holders.

55.    "Fishin' Stix" has been in continual use since 2005.

56.    "Fishin' Stix" is a common law trademark.

57.     Field & Stream used a similarly spelled "Fish'n Stix" trademark in its online advertisements without permission and without recently purchasing the actual "Fishin' Stix" products to sell.

58.     Field & Stream used a similarly spelled "Fish'n Stix" trademark in its paper advertisement as shown in Fig. 5.



Figure 5.

April 2017 Field & Stream paper advertisement excerpt

59.     The "Fishin' Stix" trademark sounds identical to the "Fish'n Stix" mark used by Field & Stream.

**Conspiracy**

60.     On or about 2011, the V-shaped rod holders and the football rod holders were being sold by Dick's Sporting Goods.

61.     Upon information and belief, on or about 2015, a representative from Dick's Sporting Goods contacted the sales representative for Fishin' Stix asking to create a store brand of Fishin' Stix rod holders for Dick's Sporting Goods.

62.     When trying to set up a meeting to discuss creating Dick's store brand of Fishin'
Stix, upon information and belief, the Dick's representative decided not to and stated "We've got
that covered" or words with similar effect.

63.     Upon information and belief, the Dick's representative said words to the effect of
"We have somebody else making the store brand" and that the decision "came from the top."

64.     Upon information and belief, W&MG started making, either directly or indirectly,
the store brand for Dick's Sporting Goods, including Jawbone and later Field & Stream.

**Inferior Product**

65.     The infringing V-shaped rod holders labeled Eagle Claw® are an inferior product
when compared to the V-shaped rod holders labeled "Fishin' Stix."

66.     The infringing V-shaped rod holders labeled "Eagle Claw®" weigh less than the V-
shaped rod holders labeled "Fishin' Stix."

67.     A retailer was actually confused between the infringing V-shaped rod holders
labeled "Eagle Claw®" and the V-shaped rod holders labeled "Fishin' Stix" and shipped the
defective Eagle Claw® rod holders to Kowalski on multiple occasions seeking reimbursement for
Eagle Claw's defective fishing rod holders.

68.     Below are two (2) of the seven (7) reviews currently on www.amazon.com for the
infringing "Eagle Claw ASTRH Stick Rod Holder":



69.    Below are three (3) reviews currently from Dick's Sporting Goods website for the

infringing "Jawbone Extendable Stick Rod Holder – Large":





**Bear0702**

Belfast Maine

Reviews **4**

Votes **4**

Gender **Male**

Purchase Location **Online**

★★★★★ · 3 years ago

**breaks**

The plastic y breaks real easy. Put any pressure at all and it snaps in two. It's kind of hard to push in the ground unless it's sand I bought 4 of them at one time I have one that isn't broke. Broke 3 of them on the first fishing trip.

⊗ **No**,  I do not recommend this product.

Helpful?   Yes · 0  |  No · 0    Report

Value



**TaraG**

Georgia

Review **1**

Votes **0**

Gender **Female**

Purchase Location **In-Store**

★★★★★ · 3 years ago

**Breaks Too Easily**

We bought four of these for bank fishing. They seemed ok the first day, but they second time we used them things went downhill. Two out of the four broke in half at the colored plastic Y-shaped section upon moderate pressure pushing them into the ground. The trouble is that even with the tapered point, they are too flimsy to get into the ground without pushing on this part. Fine, lesson learned. You can't place much pressure on this part at all before they break. But a third one is now nearly useless because the Y section came unglued from the rod and keeps slipping off. Three out of four are destroyed after less than a week. I would not buy these again. We got some of the spiral metal ones and they are much sturdier for nearly the same price.

⊗ **No**,  I do not recommend this product.

Helpful?   Yes · 0  |  No · 0    Report

Value

## **COUNT I**

### **Direct Design Patent Infringement under 35 U.S.C. § 271(a)**

### **Against W&MG, Eagle Claw, American Sports Licensing, and Dick's**

70.     Defendants incorporate by reference the preceding paragraphs.

- 14 -

71.     All Counter- and Third-Party Defendants have infringed, are infringing, and, unless abated by the Court, will continue to infringe the '995 patent within this District and elsewhere within the United States by making, either directly or indirectly, using, selling, or offering to sell their version of the football rod holder to wholesalers or distributers, retailers, and through websites without any authority to do so.

72.     All Counter- and Third-Party Defendants' infringement of the '995 patent has been willful and deliberate and in flagrant disregard of Kowalski's rights.

73.     Kowalski owns the '995 patent and is the only owner of the patent.

74.     All Counter- and Third-Party Defendants have made unlawful gains and profits from their infringement of the '995 patent, and thereby have deprived Kowalski of rights and remunerations that would have come to him but for their infringement.

75.     As a direct and proximate consequence of the acts and practices alleged above, Kowalski has been, is being, and, unless abated by the Court, will continue to be injured in his business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages, for which Kowalski is entitled to relief under the U.S. Patent Act.

76.     On or about 2012, the four-sided acrylic container housing the football rod holders was marked in accordance with 35 U.S.C. § 287.

## COUNT II

### Trade Dress Infringement under 15 U.S.C. § 1125(a)

### Against W&MG, Eagle Claw, American Sports Licensing, and Dick's

77.     Defendants incorporate by reference the preceding paragraphs.

78.     W&MG and Eagle Claw have engaged in trade dress infringement by manufacturing, using, and selling copies of the V-shaped rod holders that incorporate its nonfunctional core design elements in violation of 15 U.S.C. § 1125(a) in a manner likely to cause confusion, or to cause mistake, or to deceive customers.

79.     The V-shaped rod holder trade dress is not functional and has a combination of non-functional core design elements that can be used as a guide to describe its overall look and includes a black powder coated tubular steel stake; a V-shaped head design made of plastic that comes in black, orange, yellow, red, pink, and green; a conical plastic tip that matches the color of the head and comes in black, orange, yellow, red, pink, and green; and a patterned silver-tone reflective tape wrapped around the base of the V-shaped head.

80.     Dick's Sporting Goods, American Sports Licensing, and W&MG have engaged in trade dress infringement by manufacturing, using, and selling copies of the football rod holder and four-sided clear acrylic container that incorporate the nonfunctional core design elements in violation of 15 U.S.C. § 1125(a) in a manner likely to cause confusion, or to cause mistake, or to deceive customers.

81.     The football rod holder trade dress is not functional and has a combination of core design elements that include a black powder coated tubular steel stake; a trident-like head design whose shape is most accurately depicted in Figs. 2 and 3 that is made of plastic and comes in black, orange, yellow, red, pink, green, and off-white/greenish (glow); a conical plastic tip that matches the color of the head and comes in black, orange, yellow, red, pink, green, and off-white/greenish (glow); and a patterned silver-tone reflective tape wrapped around the base of the head.

- 16 -

82.     The four-sided clear acrylic container trade dress is not functional and has a combination of core design elements that can be used as a guide to describe its overall look and includes four (4) sides rising upwards from a square base; each of the four sides measuring 3" wide and 8" tall and the base measuring 3" by 3"; all components are made of clear acrylic to which a sticker is attached.

83.     As a result of marketing and sales of the V-shaped and football rod holders for many years, the Fishin' Stix trade dress (V-shaped rod holder, football rod holder, and container) has become distinctive or acquired secondary meaning as a means to identify the source of Fishin' Stix trade dress.

84.     Defendants own trade dress rights in the Fishin' Stix trade dress.

85.     The Fishin' Stix trade dress was used before the Counter- and Third-Party Defendants began using similar trade dress.

86.     The Fishin' Stix trade dress is non-functional and inherently distinctive.

87.     Otherwise, Fishin' Stix trade dress took on secondary meaning before that of the Counter- and Third-Party Defendants and has acquired secondary meaning through long-term, wide-spread, and continuous use of its trade dress in commerce.

88.     By virtue of the widespread use and recognition of Fishin' Stix trade dress by the public, Fishin' Stix has come to be, and now is, favorably known to the public as a high-quality fishing rod holder and its trade dress is distinctive and represents a highly valuable source indicator for consumers seeking to purchase the Fishin' Stix rod holders.

89.     Defendants have built up and now have valuable goodwill in the Fishin' Stix trade dress.

90.     All Counter- and Third-Party Defendants have been and continue to be unfairly trading upon the longstanding reputation and goodwill of Defendants as represented by the Fishin' Stix trade dress, and are thereby deceiving the public.

91.     Upon information and belief, the infringing use of the Fishin' Stix trade dress has been deliberate and willful and has been committed with the intent to cause confusion and mistake, and to deceive and defraud the public into believing its goods are affiliated with, sponsored by, or in some manner associated with Fishin' Stix causing severe damage to Defendants.

<u>**COUNT III**</u>

**Common Law Trademark Infringement**

<u>**Against Dick's Sporting Goods *dba* Field & Stream**</u>

92.     Defendants incorporate by reference the preceding paragraphs.

93.     Defendants have nationwide common law rights in "Fishin' Stix," which is a valid, protectable trademark used nationwide in stores such as Cabela's and online.

94.     Dick's Sporting Goods through Field & Stream is using a confusingly similar "Fish'n Stix" mark, without Defendants' consent, in connection with infringing products in a manner that is likely to cause confusion, mistake, and deception and that creates a false and misleading impression as to the affiliation, connection, or association of Defendants with the infringing products in addition to the false and misleading impression as to the origin, sponsorship, endorsement, and approval of the infringing products by Defendants.

95.     Field & Stream's selection, adoption, and use of the similarly spelled "Fish'n Stix" for use on or in connection with the infringing products is intended to reap the benefit of the

goodwill in Defendants' "Fishin' Stix" trademark and constitutes unfair competition and false designation of origin.

96.    Field & Stream's conduct is intentional, willful, deliberate, in bad faith, and undertaken with knowledge of Defendants' prior rights in the "Fishin' Stix" trademark and with full knowledge that Field & Stream has no right, license, or authority to use the "Fishin' Stix" trademark or any confusingly similar variation thereof, such as "Fish'n Stix" in violation of the law of the State of Colorado, which has severely damaged Defendants.

## COUNT IV

**Colorado's Consumer Protection Act C.R.S. § 6-1-01 *et seq.***

**Against W&MG, Eagle Claw, American Sports Licensing, and Dick's**

97.    Defendants incorporate by reference the preceding paragraphs.

98.    Counter- and Third-Party Defendants have been and continue to engage in deceptive trade practices in violation of Colorado's Consumer Protection Act, C.R.S. § 6-1-01 *et seq*.

99.    Upon information and belief, the deceptive trade practices of W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods have been willful, deliberate, in bad faith, and have significantly harmed the fishing industry and the public as actual or potential consumers of their inferior fishing rod holders.

100.    Defendants have been and will continue to be damaged and irreparably harmed by their deceptive trade practices unless abated by this Court.

## COUNT V

**Common Law Unfair Competition**

**Against W&MG, Eagle Claw, American Sports Licensing, and Dick's**

101.    Defendants incorporate by reference the preceding paragraphs.

102.    The actions of W&MG, Eagle Claw, American Sports Licensing, and Dick's have caused, or will likely cause, confusion as to the origin or sponsorship of their products and convey the false and misleading impression that they provide, sponsor, or endorse Defendants' products.

103.    Upon information and belief, W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods have been and continue to unfairly trade upon and appropriate the prestige, reputation, fame, and goodwill of Defendants and the Fishin' Stix products, and are thereby deceiving the public.

104.    The actions of W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods constitute unfair competition in violation of the common law of the State of Colorado.

## COUNT VI

**Induced Infringement under 35 U.S.C. § 271(b)**

**Against Dick's Sporting Goods and W&MG**

105.    Defendants incorporate by reference the preceding paragraphs.

106.    Kowalski solely owns the '995 patent.

107.    Upon information and belief, Dick's Sporting Goods and W&MG actively induced and encouraged infringement of the '995 patent by coordinating with others to make, use, sell or offer to sell infringing fishing rod holders for Dick's Sporting Goods.

108.    Upon information and belief, W&MG used at least one Chinese manufacturer to make infringing fishing rod holders for Field & Stream and those labeled with the Jawbone trademark owned by American Sports Licensing.

109.    Dick's Sporting Goods and W&MG knew of the '995 patent and communicated with others with the intent to cause them to infringe the '995 patent and their acts induced direct infringement of the '995 patent in willful and wanton disregard of Kowalski's rights entitling him to increased damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

110.    Dick's Sporting Goods and W&MG encouraged the acts that actually resulted in others directly infringing the '995 patent, which severely damaged Defendants.

## RELIEF REQUESTED

WHEREFORE, Defendants Active Outdoors and Kowalski request that:

1.    A judgment be entered in their favor declaring that:

A.    The '995 patent is valid and enforceable;

B.    W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods infringed the '995 patent and that such infringement has been willful and deliberate;

C.    Defendants own valid and enforceable trade dress rights in the Fishin' Stix trade dress;

D.    W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods infringed the Fishin' Stix trade dress and that such infringement has been willful and deliberate;

E.    Defendants own valid and enforceable common law trademark rights in Fishin' Stix;

F.    Dick's Sporting Goods infringed the Fishin' Stix trademark and that such infringement has been willful;

G.    W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods willfully and in bad faith violated the Colorado Consumer Protection Act;

H.    W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods have unfairly competed with Defendants; and

I.    This case is exceptional under 15 U.S.C. § 1117 and 35 U.S.C. § 285.

2.    W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods and all their officers, directors, agents, employees, attorneys, privies, representatives, successors, assigns, parent and subsidiary entities, and any and all persons acting in concert or participation with any of them, be temporarily, preliminarily, and permanently abated from:

A.    Directly or indirectly making or causing to be made, using or causing to be used, or selling or causing to be sold any product that infringes the '995 patent, and from any other further infringement of the '995 patent, and

B.    Using, promoting or advertising the Fishin' Stix trade dress or any other trade dress confusingly similar thereto in connection with the goods;

3.    Enter an order directing W&MG, Eagle Claw, American Sports Licensing, and Dick's Sporting Goods to return to Defendants' counsel for impoundment and destruction:

(a) All products infringing the '995 patent, and

(b) All advertising and promotional materials displaying the Fishin' Stix trade dress that in any way indicates, suggests, represents, or is likely to lead the public or individual members of the public to believe that W&MG, Eagle Claw, American Sports Liability, and Dick's Sporting

Goods are in any manner, directly or indirectly, associated, connected with, licensed, authorized, franchised, or approved by Defendants.

4.      Enter an order for an accounting of profits from the infringers.

5.      Enter a judgment for Defendants for an amount that includes actual losses suffered by Defendants and profits made by the infringers.

6.      Award Defendants their attorney fees, expenses, and costs incurred in prosecuting this action, including their expert witness fees under 15 U.S.C. § 1117 and 35 U.S.C. § 285; enhanced treble damages under 35 U.S.C. § 284; treble damages, attorney fees and costs under C.R.S. § 6-1-113; and attorney fees under 35 U.S.C. § 285.

7.      Award such other relief that the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Defendants/Counter-Plaintiffs/Third-party Plaintiffs Active Outdoors, LLC and James M. Kowalski demand a jury trial on all issues properly triable to a jury.

Respectfully submitted,

s/Ann Marie Stinnett
**Ann Marie Stinnett**
The Stinnett Law Group, PLC
101 W. Big Beaver Rd., Suite 1400
Troy, Michigan 48084
Telephone: (248) 687-1536
Fax: (248) 630-2600
Email: ams@stinnettlawgroup.com
*Attorney for Defendants/Counter-Plaintiffs/*
*Third-Party Plaintiffs Active Outdoors & Kowalski*

Dated: April 9, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record at the following email addresses:

jheuton@sheridanross.com

bknepper@sheridanross.com

The foregoing was also sent by e-mail to counsel for Defendant Kenneth Mieczkowski, Andrew J. Katsock, III, at ajkesq@comcast.net.

<u>s/Ann Marie Stinnett</u>
**Ann Marie Stinnett**
The Stinnett Law Group, PLC
101 W. Big Beaver Rd., Suite 1400
Troy, Michigan 48084
Telephone: (248) 687-1536
Fax: (248) 630-2600
Email:  ams@stinnettlawgroup.com
*Attorney for Defendants/Counter-Plaintiffs*
*Active Outdoors & Kowalski*

Dated:  April 9, 2018